GOLDING BROS. CO., INC. v. UNITED STATES

**No. 5013.**—Invoices dated Sweveghem, Belgium, May 9, January 2, 1938.
Certified May 12, January 6, 1938.
Entered at New York May 25, January 17, 1938.
Entry Nos. 115337, 804387.

(Decided October 2, 1940)

*Siegel & Mandell* (*Samuel T. Siegel* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

KINCHELOE, Judge: These appeals to reappraisement, both of which were consolidated for the purposes of trial by consent of the parties, involve the determination of the proper dutiable value of certain cotton mattress tickings imported from Belgium and entered at the port of New York. Plaintiff has limited its claim to certain qualities of the merchandise covered by the two shipments in question, which disputed items are enumerated in schedules A and B, hereto attached and made a part hereof.

It is contended by plaintiff that the 41-inch width fabrics in question are properly dutiable on the basis of export value as such value is defined in section 402 (d) of the Tariff Act of 1930; and that the 56-inch

width fabrics in question are properly dutiable on the basis of foreign value or export value, as such values are defined in section 402 of the said tariff act. The appraiser, in his official action, found no foreign or export value for either of said qualities, and therefore appraised all of said merchandise on the basis of United States value.

It is conceded by plaintiff that, if the court finds United States value to be the proper basis for determining dutiable value of the instant merchandise, then the appraised values truly represent such value within the statutory definition thereof, as set forth in section 402 (e) of the Tariff Act of 1930.

The evidence introduced herein is entirely documentary. No oral testimony was offered by either of the parties.

In support of its contention, plaintiff introduced two affidavits, Exhibits 1 and 2 herein, both of which were executed by one Camille Verwee, who testified that he has been general manager of the exporting firm of the instant merchandise for the past 6 years; that prior thereto, and for a period of 14 years, he was connected with the technical branch of said firm; that he has personal knowledge of all of the transactions entered into by his firm; and that he is personally familiar with transactions involving the purchase and sale of mattress tickings between his firm and its customers, whether for home consumption or export. Said witness further testified that his firm is engaged in the manufacture of various textiles, which include mattress tickings, for sale in the home markets of Belgium, as well as for export to other countries of the world, including the United States; and that the quality number of a fabric is indicative of a certain type of construction which never varies, although the designs used in any particular quality number may be different. The witness further testified that mattress tickings, such as or similar to those involved herein, are freely offered for sale both in foreign markets as well as for exportation to the United States, in the usual wholesale quantity of a unit that is known in the trade as "one piece" consisting of about 50 yards or 50 meters in length and the usual width of either 56 or 41 inches; and that the invoice prices truly represent such freely offered prices for said merchandise, whether for home consumption or for export to other countries, including the United States.

Defendant introduced in evidence a special agent's report with copies of offers of sales attached thereto, which were received as Collective Exhibit 3; and also a special agent's report that was admitted in evidence as Exhibit 4.

Said reports disclose that the special agent interviewed Mr. Verwee, the same representative of the exporting firm that executed the affidavits offered by plaintiff, said Exhibits 1 and 2, who informed the special agent that the mattress tickings offered for sale and sold in the Belgian market for home consumption are not the same as or

similar to those sold or offered for sale for export to the United States; that the mattress tickings freely offered for sale and sold in said foreign market for home consumption are "solely and distinctly defective merchandise which would not be acceptable for shipment to the United States"; that such merchandise is purchased in the Belgian market by the poorer classes and used as table covers; and that customers in other foreign markets use a quality of mattress ticking that is "quite different from that shipped to the United States."

Thus the testimony given by plaintiff's witness and his statements to the special agent, as reported in defendant's Collective Exhibit 3 and defendant's Exhibit 4, concerning sales and offers for sale of mattress tickings in foreign markets are highly contradictory, and certainly can form no basis on which to determine dutiable foreign value. In the light of such conflicting evidence, I hold there was no foreign value for the mattress tickings in question, as such value is defined in said section 402 (c).

With respect to the question of export value for the instant merchandise, I find corroboration of plaintiff's witness' statements that such or similar merchandise is freely offered for sale to all purchasers for export to the United States in the special agent's report, defendant's Exhibit 4. Said exhibit reports that the exporter of the merchandise in question refused to sell exclusively to one purchaser in the United States and gives the names of three firms in this country, including the plaintiff herein, to whom sales of such or similar merchandise were made. Said report further discloses that production is not reserved exclusively to the three concerns mentioned therein, but sales are confined to them solely because of the lack of other customers. Attached to said exhibit are tabulations showing deliveries of like qualities of mattress tickings to different purchasers in the United States.

Since all the offers of sales attached to the exhibits offered by both parties relate to transactions in markets other than the United States, they of course have no probative value in finding export value, as contemplated by the statute.

Referring specifically to the 41-inch width fabrics involved herein, plaintiff's witness testified that that particular width is made exclusively for export to the United States and cannot be used in the markets of Belgium or countries other than the United States.

It is my judgment that there is substantial evidence in the record before me to warrant a finding of export value for the mattress tickings in question, and that such value is truly represented by the invoice prices of the various items listed in said schedules A and B, and I so hold.

The conclusion reached herein is easily distinguishable from this court's recent decisions in the matter of reappraisements 133136–A, etc. (Reap. Dec. 4929), reappraisements 132670–A, etc. (Reap. Dec. 5007), and reappraisement 132708–A (Reap. Dec. 5005), which also involved mattress tickings imported from Belgium by the plaintiff herein. In all of the previous cases there was no proof of record, in my opinion, to show that the merchandise involved therein had been freely offered for sale within the meaning of such phrase as used in the statute. Here, I am satisfied that the evidence before me has fairly established all of the statutory elements necessary to prove dutiable export value.

On the basis of the record before me, I find the following facts:

(1) That the merchandise in question consists of certain mattress tickings, of the qualities set forth in schedules A and B, hereto attached, and made a part hereof, imported from Belgium.

(2) That there was no foreign value for such or similar merchandise at the time of exportation of the cotton mattress tickings in question.

(3) That the proper basis of appraisement for said merchandise is export value, as such value is defined in section 402 (d) of the Tariff Act of 1930.

(4) That said merchandise was freely offered for sale at the time of exportation thereof, to all purchasers in the principal market of Sweveghem, Belgium, in the usual wholesale quantity of the unit known in the trade as "one piece" consisting of 50 yards in length and either 41 inches or 56 inches in width, in the ordinary course of trade, for exportation to the United States.

(5) That such dutiable export values for the said items of mattress tickings are the invoice values.

I therefore hold as matter of law that the correct dutiable export values of said mattress tickings are the invoice values as set forth in fact (5). Judgment will be rendered accordingly.